ROBESON *v.* ROBERTS *et al.*

SURETY.—*A* recovered a judgment against *B*, as principal, and *C*, as surety, and execution was issued thereon, and delivered to the sheriff, and became a lien upon ample personal property of the principal to pay the debt. The principal debtor then made a fraudulent assignment of all his personal property to *A* and another, who both had full knowledge of fraudulent purposes of their assignor. *A* then, under color of said assignment, removed all the personal property so assigned out of the county, and sold the same and appropriated the proceeds to his own use, in order that said judgment might be collected of *C*, the surety, and then assigned said judgment to *D* and *E*, who were innocent purchasers thereof, without notice of the facts aforesaid, and who were proceeding to collect the same of *C*.

*Held*, that, by the acts of *A* in the premises, *C* was released from the payment of said judgment to him, if the same had remained his property.

*Held*, also, that *D* and *E*, having become the owners of said judgment after the equities in favor of *C* had accrued took the same subject thereto, and therefore can not collect the same of *C*.

ASSIGNEE OF JUDGMENT.—Assignees of a judgment, under our statute, take the same subject to whatever equities exist in favor of the judgment debtor.

APPEAL from the *Franklin* Circuit Court.

WORDEN, J.—Action by the appellant against the appellees. Demurrer to the complaint sustained.

The following is the case made by the complaint: It is alleged that, in *July*, 1858, the defendant, *Roberts*, recovered a judgment in the Court of Common Pleas of said county against the plaintiff and *Henry Shafer*, for 247 dollars and 33 cents, upon a promissory note, before that time, given by said *Shafer*, as principal, and the plaintiff as surety to the said *Roberts*.

That on the 3d of *April*, 1858, said *Henry Shafer* fraudu-

lently assigned all his real and personal property to *John Wynn*, since deceased, and to said *Roberts*, by deed of assignment, which is set out and alleged to have been recorded. The deed purports to provide for the payment of a large amount of debts which are specified; that personal and real property, to the amount of 5,000 dollars, came into the hands of *Roberts*, by virtue of the assignment; that on the 17th of *July*, 1858, an execution was issued upon the judgment and placed in the hands of the proper sheriff, which became a lien upon the personal property of said *Shafer;* that being first liable to the payment of the judgment, and there being sufficient personal property of *Shafer* in the county for the payment of the judgment, beyond what was exempt from execution; that *Roberts*, together with *Wynn*, deceased, well knowing the premises, and that the execution was in the hands of the sheriff and a lien upon the property, took the property out of the county and beyond the reach of the execution, and sold the same, and converted the proceeds to their own use, the said *Roberts* now having the money; all of which was done by said *Roberts* to get the property of *Shafer* out of the reach of the execution, and convert it to his own use, and then to make his judgment out of the property of the plaintiff, who was only surety for *Shafer;* that in order to carry out his designs, *Roberts*, on the 19th of *June*, 1860, duly assigned the judgment to the defendants, *Abner McCarty* and *George Holland;* that on the 2d day of *September*, 1861, an *alias* execution was issued upon the judgment, and placed in the hands of the sheriff, with instructions to levy the same on the property of the plaintiff, which the sheriff is about to do; that the deed of assignment was made to defraud the plaintiff and other creditors of *Shafer*.

Prayer, that the parties be enjoined from collecting the judgment out of the plaintiff's property; that the deed of

assignment be set aside; that the judgment be paid out of the moneys in the hands of *Roberts*, and for other relief.

In examining the validity of the complaint we may assume that the deed of assignment from *Shafer* to *Wynn* and *Roberts* was fraudulent, and hence void; for it is alleged to have been fraudulently made and that the assignees well knew the premises. The assignment then, so far as it would otherwise be deemed a justification of the acts of *Roberts*, may be left out of view. The case then may be briefly stated thus: *Roberts* had a judgment against *Shafer*, as principal, and the plaintiff as surety. An execution, issued upon the judgment, became a lien on sufficient personal property of *Shafer* to pay the debt. This property *Roberts*, under color of a fraudulent assignment from *Shafer*, took out of the county, beyond the reach of the execution, and sold, appropriating the proceeds to his own use, and this for the purpose of collecting the judgment out of the property of the plaintiff who was the surety.

On the supposition that the assignees of the judgment occupy no better position than *Roberts*, the original judgment creditor, we think the acts charged against *Roberts*, on principles of equity, release the plaintiff, *Robeson*, from the payment of the judgment.

While a creditor may not be bound to active diligence in the collection of his claim, yet if he does any act injurious to the surety or inconsistent with his rights, the latter will be discharged. 1 Story's Eq., sec. 325.

The creditor is not entitled to relinquish any hold which he has actually acquired on the property of the principal, and which might have been made effectual for the payment of the debt. Thus, when property has been levied upon, and the levy relinquished by the creditor, or where property has been voluntarily delivered by the principal to the creditor as security, and afterwards surrendered, the surety will be dis-

charged to an extent equal to the value of such property. *Vide* cases collected in Lead. Ca. in Eq., part 2, vol. 2, top p. 234, ed. of 1850. But it has been held, in a number of instances, that the withdrawal of an execution against the principal after it has been placed in the hands of the sheriff, but before actual levy, will not exonerate the surety, even where it appears that the goods which were bound by the lien of the execution and would probably have been made available for the discharge of the debt, have been removed by the debtor beyond the reach of process, or levied on and sold by other creditors. *Id.* 373. The authors of the work quoted, at page 374, observe that, "it is somewhat difficult to reconcile the decisions, that the withdrawal of a levy discharges the surety, with those which hold that the countermand of a writ before levy is not a discharge. There seems no distinction in principle, between a waiver of the lien which arises as soon as the writ comes into the hands of the sheriff, and that which exists after actual levy, for both are legally binding, although the former is liable to be defeated by contingencies which would not affect the latter."

The decisions, however, are not uniform that the withdrawal of an execution before levy does not discharge the surety. Thus in *Glass* v. *Thompson*, 9 B. Monroe 235, (a case which we do not find in the work above quoted,) it is held that, "a stay of an execution by the creditor when it has been levied on the property of the principal, without the privity or assent of the surety, will have the effect to release the surety, inasmuch as it greatly increases his risk, and may ultimately subject him to the payment of the debt. (3 Bibb. 467.) When a lien on the property of the principal is created, by an execution in the hands of an officer, and such lien is lost or waived by the act of the creditor, the injury to the surety is the same, and as the same effect ensues, the surety, under such circumstances, is also exonerated in equity."

Robeson *v.* Roberts et al.

We shall not, in this case, decide between the conflicting decisions, whether the withdrawal of an execution before levy, which had become a lien on the goods of the principal, will discharge the surety. There was something more than the withdrawal of the execution. Had that been withdrawn simply, another one might have afterwards been issued, and the goods might have been seized upon it for the payment of the debt. By the wrongful act of the creditor, the goods upon which the execution had become a lien, were taken away and sold, so that the lien thus acquired was not only rendered ineffectual, but the goods were placed beyond the reach of any other execution, that might be afterwards issued upon the judgment. Under such circumstances it would be clearly inequitable to permit the creditor to coerce payment from the surety. The case of *Green* v. *Kimble,* 6 Blackf. 552, on which the appellees rely, is not at all in point. There, one *McClure* had a judgment against *Clark,* on which *Kimble* was replevin bail. An execution, issued upon the judgment and placed in the hands of the sheriff, became a lien on the goods of *Clark,* the judgment debtor. *Green,* knowing the premises, fraudulently removed the goods beyond the county, and converted them to his own use, whereby the sheriff was prevented from seizing them. *Clark* had no other goods, and the property of *Kimble* was levied upon for the debt. *Kimble* sued *Green* in an action on the case, for removing the property, and it was held that he had not such an interest in the property as would enable him to maintain the action.

That case differs from the one before us in two essential particulars, if not more. That was an action at law to recover damages, and not a proceeding on the chancery side of the Court to be relieved from the payment of the judgment. This is an application to be thus relieved. In that case the property was removed by a third person. The judgment creditor had nothing to do with, and was not responsible for

its removal. Here, the wrong was done by the creditor himself, and he must suffer the consequences of his own wrong. We remark, before leaving this branch of the case, that we intend to express no opinion as to what would be the effect of the taking away of the property by *Roberts*, if he were acting in good faith, believing the assignment to be valid.

We proceed now to inquire whether the assignees of the judgment occupy any better position than *Roberts*, or whether they took it subject to the equity which attached to it in his hands. It will be observed that the complaint admits the due assignment of the judgment, and does not charge the assignees thereof with any notice. We must take them to be purchasers in good faith. The statute which authorizes the assignment of judgments, (2 R. S. 1852, p. 335,) does not seem to contain any provisions which, in themselves, answer the question here involved. It provides how judgments may be assigned so as to "vest the title to such judgment or decree in each assignee thereof successively." It provides also that "payments or satisfaction on such judgment or decree, to the assignor, shall be valid, if made before notice of assignment to the judgment debtor, but not otherwise." This last provision relieves the judgment debtor from the necessity of examining the records to see if a judgment against him has been assigned, and throws the burthen of notifying him on the assignee. Without notice, other than the record, a payment to the judgment creditor after assignment would be good. This provision does not throw much light on the question involved. For a solution of the question we must look to general principles. In the case of *Reid* v. *Ross*, 15 Ind. 265, it was said by this Court, in speaking of the assignment of a judgment, "we see no good reason why this transfer does not stand upon the same ground as any personal chattel." We do not yet see any reason for any different conclusion, except in one particular, which will be noticed

Robeson *v.* Roberts et al.

hereafter. It is a familiar general principle, that no man can confer a greater interest in, or better title to, personal property than he has himself. And this principle is as applicable to choses in action (paper governed by the law merchant of course excepted,) as to any other species of personalty. The principle that the purchaser of the legal title to real estate without notice of an outstanding equity, takes it discharged of the equity, has no application in the case of the purchaser of chose in action. It is a general and well settled principle that the assignee of a chose in action takes it subject to the same equity it was subject to in the hands of the assignor. Lead. Ca. Eq., vol. 2, pt. 1, p. 51, *et seq.* This doctrine has recently undergone an examination in *New York*, and the position above stated fully maintained. *Bush* v. *Lathrop*, 22 N. Y. 535.

We think that the assignee of a judgment under our statute, takes it subject to whatever equities exist in favor of the judgment debtor. We do not, however, decide that such assignee takes subject to equities in favor of third persons of which he has no notice. The difference between the two cases is clear and substantial. The party proposing to take an assignment of a judgment can go to the judgment debtor and ascertain the true state of the case. If the debtor have any equitable ground for refusing to pay, he can so state; if not, and he so state to the party proposing to take an assignment, and the purchase is made on the faith of such disclaimer, he will be thereafter estopped to set up any such matter.

But a party who proposes to purchase a judgment has no means of ascertaining what claims third persons may have, or pretend to have on the judgment, unless such claims appear on or attached to the entry of judgment where the same is to be assigned. Hence it would seem that an assignee without notice should take the judgment freed from the claims of such third persons. See authorities last above cited.

---

---

In this respect, perhaps the assignment of a judgment stands upon a little different ground from the sale of another chattel.

The conclusion is that the assignees of the judgment, in the case before us, took it subject to the right of the plaintiff to set up his claim to be released, in the same manner as if the judgment had not been assigned.

There is yet another ground on which the plaintiff was entitled to relief. The real estate embraced in the fraudulent assignment was situated in *Franklin* County, where the judgment was rendered, and the judgment became a lien upon it. This real estate was subject to sale on execution. 2 R. S. 1852, p. 153. The surety had the right to have this real estate levied upon and sold, before levying upon his own. It does not appear that this real estate has been sold by the assignee, or that it has otherwise passed into the hands of innocent purchasers.

We have thus determined the question that seemed to us to be involved in the complaint, but we can not reverse the judgment of the Court on the demurrer, because there was no final judgment rendered in the cause. The Court sustained the demurrer to the complaint, but rendered no final judgment for the defendants. The cause is still pending, so far as the record before us shows, in the Court below. The plaintiff may yet take any step in the cause, by getting leave to amend his complaint, or otherwise, without again summoning the defendants to appear. The judgment on the demurrer is evidently not a final one from which an appeal lies to this Court. 2 R. S. 1852, p. 158, sec. 550.

The appellees have asked us, notwithstanding there was no final judgment, to pass upon the questions involved, and we have done so. Perhaps this course will save the necessity of bringing the case again to this Court.

*Per Curiam.*—The appeal is dismissed with costs.

*J. W. Johnson* and *W. Morrow*, for the appellant.

*George Holland* and *C. C. Binkley*, for the appellees.