*D. P. Baldwin*, for appellant.

———————•———————

## KEMP *v.* MITCHELL and Others.

PLEADING.—*Redemption.*—A bill to redeem is not good in equity unless it contain a formal offer to pay whatever sum may be found due upon taking the account.

APPEAL from the Morgan Circuit Court.

DOWNEY, J.—The only error assigned in this case is, that

the circuit court improperly sustained the demurrer to the cross complaint filed by Kemp.

Perry Hamilton sued Johnson and Armstrong, alleging that Kemp was, on the 29th of December, 1853, the owner of real estate described in the complaint; that, on that day, Kemp executed a mortgage on said real estate to the State of Indiana for two hundred and fifty dollars; that, on the 22d day of October, 1860, the mortgage being unpaid, Kemp sold and conveyed the land to said Johnson and Armstrong by a general warranty deed; that, on the 20th day of March, 1861, Johnson and Armstrong, by warranty deed, conveyed said lands to Mitchell and Mitchell; that, on the 31st day of December, 1863, said Mitchell and Mitchell, by warranty deed, conveyed the same to said plaintiff Hamilton; that the said plaintiff had been compelled to, and did, pay off the said mortgage, which was a breach of the covenant in the deed from said Johnson and Armstrong to said Mitchell and Mitchell; wherefore, etc.

Copies of the mortgage and deeds referred to are made part of the complaint.

Johnson and Armstrong, after setting out the facts of the case, say that said Kemp and said Mitchells are parties in interest herein, and ask that they be summoned to answer as to their interest and be made parties.

Accordingly Kemp filed his cross complaint, in which he alleges that, on the 22d day of October, 1860, he was the owner, in fee simple, of the lands set out in the complaint, and was the owner thereof at the time of the execution of said mortgage in the complaint mentioned; that, on that day, he sold said lands to Johnson and Armstrong, for twenty-six hundred and forty dollars, and, with his wife, executed to them a deed therefor; that, on the 20th day of March, 1861, he purchased said land back from said Johnson and Armstrong, and agreed to pay them eleven hundred and eighty dollars in money, and surrender certain notes made by them to him for the balance of the purchase-money; that Johnson and Armstrong, in pursuance of said contract, placed him

in possession of said land; that he borrowed of Mitchell and Mitchell eleven hundred and eighty dollars with which to pay said Johnson and Armstrong, and, in consideration of the loan to him by said Mitchell and Mitchell of said sum, he executed to them two promissory notes, one for the payment of seven hundred and sixty-nine dollars and fifty cents, on December 25th, 1861, and the other for seven hundred and sixty-nine dollars and fifty cents, due on the 25th day of December, 1862, with interest on each from March 21st, 1861; that to secure the payment of these notes, and the interest and usury thereon, he caused Johnson and Armstrong to convey, on the 21st day of March, 1861, the said real estate, to said Mitchell and Mitchell; that at the October term, 1863, of the common pleas, as he has since been informed, and believes, said Mitchells procured judgment against him in said court, on said notes and certain pretended tax receipts, in the sum of seventeen hundred and eighty-five dollars and eighty-two cents; that he had no notice or information that any action was instituted against him by said Mitchells, or was pending against him in said court or elsewhere, until long after said judgment was rendered; that about the time of the term of said court, he did learn that one Phelps, the attorney of said Mitchells, had been at his house, and left some sort of paper, which, being unlearned, he could not read, but understood to be a subpœna to appear as a witness; that he never, at any time until the — day of ————, 18—, learned the character of said paper, or that a judgment, as aforesaid, had been rendered against him, or the amount thereof, or that the same was declared to be a lien on said land, a copy of which judgment is filed with the cross complaint; that on the 31st day of December, 1866, without his knowledge or consent, said Mitchells entered satisfaction of said judgment, without ever selling said lands or any part thereof, upon said judgment, and a copy of the satisfaction is filed; that at the time said deed and notes were executed, said Mitchells executed to him a bond or other instrument in writing, which he understood to be

an instrument declaring and showing that said deed was to be held only as a mortgage; that before and about the time said judgment was rendered, he offered to satisfy the demands of said Mitchells, and to procure a release of the lien thereon for said loan, and to pay them the amount thereof, which the Mitchells refused; that before they acquired said judgment, the said Mitchells declared themselves to be the owners of said lands, and knowing that defendant was poor and had no means or property but said land, threatened to eject him therefrom, and repeatedly offered to sell said land to others, but he, on all occasions, declared the land to be his, and kept and retained possession thereof until, on the —— day of ————, 18—, said Mitchells, who knew him to be ignorant, of weak intellect, and greatly oppressed by his debts and claims, by them held as aforesaid, proposed to deliver to Susannah Kemp, wife of defendant, two horses of the value of one hundred dollars each, and two hundred dollars in money, if she would procure defendant to leave said premises; that she did accept two horses of the value of about one hundred and fifty dollars, and one hundred and eighty-two dollars and fifty cents in money, on said proposition from said Mitchells, they retaining, as they declared, seventeen dollars and fifty cents in money, to pay on said mortgage set out in the complaint; that said Mitchells agreed, if she would permit them to retain said seventeen dollars and fifty cents from said two hundred dollars, they would satisfy the principal of said mortgage; that in accordance with said proposition, said Susannah, who was living with said defendant on said land, and who exercised great control over said defendant and his affairs, left said lands and took a portion of defendant's personal property therefrom, but defendant still retained possession of said land, and the dwelling-house thereon, until long after the 31st day of December, 1863, when said Mitchells conveyed the same to plaintiff, as shown by the deed, a copy of which is filed herewith; that plaintiff had full notice of defendant's interest in said lands at the time said deed was executed to him by said

Mitchells, and, to get possession of said lands, after said deed was executed, forcibly and fraudulently took the same from defendant; that before the execution of said deed by said Mitchells to plaintiff, said Mitchells, and others in their interest, and for their purposes, fraudulently procured said defendant to deliver the bond and instrument, by them executed to him as aforesaid, for examination, and afterward procured said defendant to execute some writing to said Mitchells, in connection with said bond, whether on the same or otherwise, defendant is unable to state, and that said Mitchells, or others in their behalf, kept said bond and said other writing, so that defendant is unable to furnish a copy thereof; that for the reason that plaintiff and said Mitchells have, by the frauds aforesaid, deprived him of his said lands, and he has no other means or property, he is unable to bring into court the amount of said loan, and the interest thereon as he would otherwise do ; that said lands are of the reasonable value of four thousand dollars; that said Mitchells are learned, cunning, and astute bankers and usurers, while he is, as before alleged, ignorant and of weak intellect, and that said plaintiff and Mitchells have, in all their acts aforesaid, confederated and conspired to cheat ; wherefore, defendant prays that the deed aforesaid from said Mitchells to said plaintiff may be set aside and held for naught; that the deed from Johnson and Armstrong to the Mitchells be declared to be a mortgage to secure the payment of said loan of eleven hundred and eighty dollars; that the Mitchells be required to proceed to foreclose said mortgage, or that the court declare that said lands shall be sold as upon a foreclosure of said mortgage; that out of the proceeds, the school mortgage, set up in the complaint, be satisfied, with the loan of the Mitchells, and that the residue of the proceeds of said land be paid to this defendant, and for all other proper relief.

Several objections are urged to the cross complaint. It is a little difficult to classify the pleading. It is not, we sup-

pose, intended as a complaint to foreclose a mortgage, for such a complaint is filed by the mortgagee or his assigns; but this is filed by the party who claims to stand in the position of mortgagor. We are not aware of any rule of law by which a mortgagor can, by complaint, compel the mortgagee to foreclose the mortgage, or foreclose it for him.

We are inclined to regard the cross complaint as one to redeem the mortgage, and regarding it as such, the question is, is it sufficient? What are the essentials of such a complaint? As it is equitable relief which is sought, we must, in the absence of any statutory provision on the subject, look to the approved authorities on the subject of equity pleading for an answer to these questions. If the deed was but a mortgage, as claimed by Kemp, then he was bound to pay the money at the time stipulated, or, according to the doctrines of the courts of law, his right to pay off the debt and have his land back was gone. But in equity the rule was different. There he might come afterward with the money and interest, and, on paying, have a return of the pledge. If the mortgagee refused to accept it, he might file his bill to redeem, and, praying the court to take the account, and offering to pay what might be found due, the court would take jurisdiction, ascertain the amount, and compel the mortgagee to accept it, and give up his claim upon the mortgaged property. But, though it was not necessary that the party filing such a bill should actually bring the money into court, in the first instance, it was necessary that he should offer to pay the amount which he acknowledged to be due, or which the court should find to be in arrear.

"It is a uniform requirement, in regard to bills to redeem, that the bill should contain a formal offer to pay whatever sums the plaintiff admits to be due; and the prayer, that upon payment of whatever sums might be found due upon taking the accounts between the parties, the mortgagee or other incumbrancer might be decreed to reconvey the property, is not sufficient. Such a bill was held bad upon de-

murrer, and leave granted to amend by inserting a formal offer to pay.  It is not important that the offer to pay should name any sum which the plaintiff admits to be due, although in point of practice a definite sum is commonly tendered in such cases, in order to recover costs, if the sum found due falls below the sum tendered.  But the bill must contain a formal offer to redeem, by paying whatever sum shall be found due upon taking the account."  Story's Eq. Pl., sec. 187 (a);  *Harding* v. *Pingey,* 10 Jur. (N. S.) 872.

"A bill in equity must state a case upon which, if admitted by the answer, a decree can be made;  therefore a bill to redeem from a sale upon execution of a right of redemption, which contains no averment of readiness to pay and an offer to pay, is bad on demurrer, for want of equity."  *Perry* v. *Carr,* 41 N. H. 371.

Counsel for the appellant, however, refer us to *Crassen* v. *Swoveland,* 22 Ind. 427, and *Crane* v. *Buchanan,* 29 Ind. 570, and contend that the plaintiff should recover on the authority of those cases.  But those were actions brought for money had and received, the mortgagee having sold the land for more than the amount of the debt.  The cross complaint cannot be sustained as a complaint for the recovery of money.  The code enumerates four things which the complaint "shall contain."  2 G. & H. 69, sec. 49.  The fourth of which is "a demand of the relief to which the plaintiff may suppose himself entitled.  If the recovery of money be demanded, the amount thereof shall be stated."

This question was considered, by this court, in *Colson* v. *Smith,* 9 Ind. 8, and it is evident that if the amount of money for which judgment was asked had not been specified in the body of the complaint and referred to in the prayer, it would have been adjudged bad as a complaint for money. If the defendant do not demur, but answers the complaint, any relief may be granted to which the complaint shows the party to be entitled.

We are unable to see any such connection between the

matter set up in this cross complaint and the cause of action of the plaintiff as would authorize the filing of a cross complaint. The cause of action was simply a breach of the covenant against incumbrances in one of the deeds constituting a link in the plaintiff's chain of title. The controversy between Kemp and the Mitchells had no connection with it whatever.

In *Fletcher* v. *Holmes*, 25 Ind. 458, this court say: "The statute expressly confers power to determine the rights of the parties on each side of a case as between themselves, when the justice of the case requires it." 2 G. & H. 218, sec. 368. "The mode of procedure, however, is not pointed out by the statute, and as the authority given is one previously possessed only by courts of chancery, we suppose the rules of pleading and practice of those courts, modified by the spirit of the code, must be resorted to." 2 G. & H. 336, sec. 802. "In those courts, when a defendant sought relief against a co-defendant, as to matters not apparent upon the face of the original bill, he must file his cross bill, alleging therein the matters upon which he relied for relief, making defendants thereto of such co-defendants and others as was proper, and process was necessary to bring them in," etc.

Following out this idea, and referring to the authorities with reference to cross bills, we find, as we think, a satisfactory solution of the question in hand.

"A cross bill, *ex vi terminorum*, implies a bill brought by a defendant in a suit against the plaintiff in the same suit, or against other defendants in the same suit, or against both, touching the matters in question in the original bill," etc. Story's Eq. Pl., sec. 389.

"A cross bill is a bill brought by a defendant against a plaintiff, or other parties in a former bill depending, touching the matter in question in that bill." Mitford Ch. Pl. 80. So in *Cross* v. *De Valle*, 1 Wal. 1, it is said: "A cross bill, being an auxiliary bill simply, must be a bill touching matters in question in the original bill." *Frear* v. *Bryan*, 12 Ind. 343. But as the demurrer in this case was by the

Mitchells, and not by Hamilton, perhaps this last question does not properly arise.

The judgment is affirmed, with costs.

*W. R. Harrison* and *W. S. Shirley,* for appellant.

*J. S. Hester, J. V. Mitchell,* and *J. N. Sweetser,* for appellees.