## SUMMERS *v.* HUTSON ET AL.

PROMISSORY NOTE.—*Assignment of.*—*Intervening Rights of Third Persons.*— If A. places personal property in the hands of B., as his agent, to sell, and B. sells the property to C. and wrongfully takes for it a note, not governed by the law merchant, to himself or to D., and the note is assigned by the payee to an innocent assignee for a valuable consideration, in a suit by the assignee of the note against the maker, A. may, on his application, be made a defendant, and may set up by way of answer the facts, stating his rights and interest, and recover on the note so given. BUSKIRK, C. J., dissented.

From the Madison Common Pleas.

*M. S. Robinson* and *J. W. Lovett,* for appellant.

*J. Brown* and *Chambers & Saint,* for appellees.

PETTIT, J.—This suit was brought by the appellant against Nicholas Smith and William Legg, on a promissory note for six hundred dollars, made by them and payable to Roland M. Summers, with waiver of valuation and appraisement laws, and an agreement to pay attorneys' fees if suit was brought on it, and indorsed and assigned to the appellant. The note was not payable in bank. Hutson, one of the appellees, filed a written motion to be made a party defendant to the suit, and, with his motion, filed an answer in these words :

" Comes now the said James Hutson, who has been admitted as a party, and for answer in said cause says that the note sued on, together with a certain other six-hundred-dollar note, was given for the undivided half of a portable saw-mill and fixtures and implements thereunto belonging; that prior to and at the date of said note, the said one-half of said saw-mill belonged to and was owned by this defendant, and that he placed the same in the possession of one Horace Summers, as his agent, and employed and authorized the said Summers to sell said mill for and in behalf of this defendant, and to account to and pay over to him the proceeds of such sale ; that as the agent of this defendant, the said Horace Summers did sell the said Hutson's interest in said saw-mill, to wit, the undivided half thereof to Smith and Legg, for twelve

hundred dollars, and, in violation of his trust and contrary to his agreement, took said note as and for a part of the purchase-price of the said Hutson's property as aforesaid, in the name of and payable to Roland M. Summers, who is a minor son of the said Horace Summers, and for the purpose of defrauding the said Hutson; and that said Roland M. Summers indorsed and assigned said note to the plaintiff, without any consideration and for the purpose of cheating and defrauding the said Hutson, and for the purpose of putting the proceeds and avails of said saw-mill more effectually out of the reach of said Hutson; wherefore the said Hutson says he is entitled to have judgment rendered in his favor upon said note, and for other proper relief."

The written motion of Hutson to be admitted a party defendant contained the substance of his answer above set out and filed with the motion.

The appellant, who was plaintiff below, moved to reject the application of Hutson to be made a party defendant, and also demurred to the answer of Hutson filed therewith, for want of sufficient facts.

The motion and demurrer were both overruled, and proper exceptions taken, and these rulings are assigned for error. 2 G. & H. 46, sec. 18, provides: "Any person may be made a defendant who has, or claims, an interest in the controversy, adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the questions involved." Hutson claimed an interest in the subject in suit, and was properly admitted as a defendant, to enable him to assert and establish his interest in it.

The demurrer of the plaintiff to Hutson's answer was for these causes :

" 1. The answer does not state facts sufficient to constitute a defence to this action.

" 2. Because he says that said answer does not state facts sufficient to constitute a cause of action against the defendants Smith and Legg."

The demurrer was overruled, and, we think, rightly. The

answer shows that the note in suit was given for the purchase-money of Hutson's property, sold by his agent and wrongfully and fraudulently made payable to one Roland M. Summers, when it should have been made payable to Hutson, and was fraudulently assigned to the plaintiff without any consideration.

In *Robeson* v. *Roberts*, 20 Ind. 155, on page 161, this court says:

"It is a familiar general principle, that no man can confer a greater interest in, or better title to, personal property than he has himself. And this principle is as applicable to choses in action (paper governed by the law merchant of course excepted) as to any other species of personalty. The principle that the purchaser of the legal title to real estate, without notice of an outstanding equity, takes it discharged of the equity, has no application in the case of the purchaser of a chose in action. It is a general and well settled principle that the assignee of a chose in action takes it subject to the same equity it was subject to in the hands of the assignor. Lead. Cases Eq., vol. 2, pt. 1, p. 51, *et seq.* This doctrine has recently undergone an examination in New York, and the position above stated fully maintained. *Bush* v. *Lathrop*, 22 N. Y. 535."

In *Sims* v. *Wilson*, 47 Ind. 226, this question is fully discussed, and the doctrine above stated maintained. *Stafford* v. *Van Rensselaer*, 9 Cowen, 316; *Schafer* v. *Reilly*, 50 N. Y. 61–68.

The plaintiff replied to the answer of Hutson by a general denial. The defendants Smith and Legg made default. It seems, by the record and briefs, that they did not care who got judgment against them on the note, they only desiring to be protected by the judgment of the court against another suit. A jury was empanelled, and, by agreement of the parties and the consent of the court, the jury was to answer certain questions propounded to them, without finding a general verdict, and the court, on the findings of the jury, was to render the proper judgment. The questions propounded to and answered by the jury were as follows:

"1. Who was the owner of one-half of the saw-mill sold by Horace Summers to Smith and Legg, at the time of the sale?

"Ans. Hutson.

"2. Did John Summers pay a consideration for the note in suit?

"Ans. He did.

"3. If yea, how much and to whom?

"Ans. To Horace Summers, four hundred and sixty-three dollars and thirty-seven and one-half cents.

"4. Did John Summers purchase the note in good faith?

"Ans. He did.

"5. When John Summers got the note in suit did he know that it belonged to Hutson?

"Ans. No.

"6. Did Hutson authorize Horace Summers to take the note for the purchase-money of the mill in any other name than that of Hutson?

"Ans. No.

"7. Did Hutson deliver up to Horace Summers the mill to be sold?

"Ans. Yes.

"8. If yea, for what purpose? what was to be done with the proceeds?

"Ans. To be applied on said debts."

A motion by the plaintiff for judgment in his favor on the findings of the jury was overruled, and a motion for judgment on the findings of the jury in favor of the defendant Hutson was sustained. If the conclusions, as to the law above stated, are correct, there was no error in these rulings.

There was a motion for a new trial by the plaintiff overruled. All the questions raised by it have been fully considered and are involved in the foregoing opinion.

We hold, that if A. places personal property in the hands of B., as his agent, to sell, and B. sells the personal property and takes a note for it, not governed by the law merchant, to himself or to a third person, and the note is assigned by the

payee to an innocent assignee for a valuable consideration, in a suit by the assignee of the note against the maker, the owner of the property sold, and for which the note was given and wrongfully made payable to another person instead of to himself, may set up the facts, his rights, and interest, and recover on the note thus given.

" An abuse of trust can confer no rights on the party abusing it, nor on those who claim in privity with him." *Taylor* v. *Plumer,* 3 Maule & S. 574; *Fawcett* v. *Osborn,* 32 Ill. 411; *Brooks* v. *Record,* 47 Ill. 30; *Burtis* v. *Cook,* 16 Iowa, 194, 203.

The judgment is affirmed, at the costs of the appellant.

BUSKIRK, C. J.—I cannot give my assent to the opinion of the majority of the court. The action was by the appellant, as assignee of a promissory note executed by Smith and Legg, payable to Roland M. Summers, and by him assigned to appellant. Smith and Legg made default. The appellee Hutson, upon his application, was made a defendant, and filed the answer set out in the opinion of the majority of the court. The issue formed was between the original plaintiff and the appellee Hutson. It simply denied the right of the plaintiff to recover upon the note. It did not entitle Hutson to judgment against Smith and Legg, the makers of the note. The answer was strictly defensive. It did not constitute an independent cause of action. It did not entitle Hutson to any affirmative relief. The dismissal of the action by the appellant would have carried with it the answer in question. *Curran* v. *Curran,* 40 Ind. 473. If Hutson desired a judgment against the makers of the note, he should have filed a cross complaint, making the original plaintiff and defendants parties thereto, and he should have asked for judgment against the makers of the note. This is firmly settled by repeated decisions of this court.

In *Kemp* v. *Mitchell,* 36 Ind. 249, this court say : " In *Fletcher* v. *Holmes,* 25 Ind. 458, this court say : ' The statute expressly confers power to determine the rights of the parties

on each side of a case as between themselves, when the justice of the case requires it.' 2 G. & H. 218, sec. 368. ' The mode of procedure, however, is not pointed out by the statute, and as the authority given is one previously possessed only by courts of chancery, we suppose the rules of pleading and practice of those courts, modified by the spirit of the code, must be resorted to.' 2 G. & H. 336, sec. 802. 'In those courts, when a defendant sought relief against a co-defendant, as to matters not apparent upon the face of the original bill, he must file his cross bill, alleging therein the matters upon which he relied for relief, making defendants thereto of such co-defendants and others as was proper, and process was necessary to bring them in,' etc. Following out this idea, and referring to the authorities with reference to cross bills, we find, as we think, a satisfactory solution of the question in hand.

" ' A cross bill, *ex vi terminorum,* implies a bill brought by a defendant in a suit against the plaintiff in the same suit, or against other defendants in the same suit, or against both, touching the matters in question in the original bill,' etc. Story Eq. Pl., sec. 389.

" 'A cross bill is a bill brought by a defendant against a plaintiff, or other parties in a former bill depending, touching the matter in question in that bill.' Mitford Ch. Pl. 80. So in *Cross* v. *De Valle,* 1 Wal. 1, it is said : ' A cross bill, being an auxiliary bill simply, must be a bill touching matters in question in the original bill.' *Frear* v. *Bryan,* 12 Ind. 343."

The ruling in the above case was adhered to in the subsequent cases of *The United States Ex. Co.* v. *Lucas,* 36 Ind. 361, and *Pattison* v. *Vaughan,* 40 Ind. 253. In the case last cited, it was held, that where the persons made defendants to the cross bill were already parties to the original action, no new process was necessary, but that the rule was otherwise where new parties are made.

The precise question under examination was involved and decided by this court, in *Hill* v. *Marsh,* 46 Ind. 218. There Malinee, who should have been joined as a plaintiff, but who, upon his refusal to so join, was made a defendant,

filed an answer, alleging that Marsh, if entitled to recover, was only entitled to recover one-half of the amount. The court rendered judgment for Marsh for one-half, and for Malinee for the other half of the amount found due. This court affirmed the judgment in favor of Marsh, but reversed it as to Malinee, upon the ground that he had not filed a cross complaint against the plaintiff and his co-defendants, asking for affirmative relief against the defendants thereto. That case is squarely in point, and should be decisive of the point under examination.

In my judgment, the appellant was entitled to judgment on the special findings of the jury. The effect of the special findings was, that the appellant purchased the note in suit in good faith and for a valuable consideration, and without any notice of the latent equities in favor of the appellee Hutson. It is provided by sec. 3 of an act concerning promissory notes, etc., 2 G. & H. 658, that " whatever defence or set-off the maker of any such instrument had, before notice of assignment, against an assignor, or against the original payee, he shall have also against their assignees."

The above section of the statute limits the defence and set-off to the assignor or original payee. There is no provision for defences in favor of third persons. When the appellant purchased the note in question, he knew that the makers of the note could set up as a defence, in an action by him, whatever defence they had against the original payee. Knowing this, he might have protected himself against any set-off or defence, on the part of the makers, by inquiring of them previous to his purchase, whether they had any set-off or defence to the note. But he had no means of protecting himself against latent equities in favor of third persons.

It was held by this court in *Stoner* v. *Brown*, 18 Ind. 464, that the sale and indorsement of a promissory note invested the legal title in the assignee, and that such legal title prevailed over an equity in favor of a third person.

It was also held by this court, in *Robeson* v. *Roberts*, 20 Ind. 155, that the assignee of a judgment took it subject to

whatever equities existed in favor of the judgment debtor; but the court expressly decided that he took it freed from the equities in favor of third persons of which he had no notice. The reason given was, that the party proposing to take an assignment of a judgment can go to the judgment debtor and ascertain the true state of the case.

The case of *Sims* v. *Wilson*, referred to and relied upon in the opinion of the majority of the court, does not support the position it is cited to sustain. In that case, a trustee had taken a note payable to himself personally, and had made an equitable assignment of it to Wilson, who brought suit against the makers. Sims, who had been appointed trustee in place of the former trustee, was, upon his own application, made a party, and he thereupon filed a cross complaint against Wilson and the makers of the note, in which he asked for judgment against the makers. We held, that as there had been no assignment of the note, Wilson did not acquire the legal title to the note, and that as the equities of the trustee were prior to those in favor of Wilson, the prior equities should prevail. The ruling was expressly placed upon the ground that Wilson had acquired only an equitable and not a legal title to the note. I regard that opinion as being strongly against the opinion in the present case. The ruling in the present case is not only in conflict with that case, but with those of *Stoner* v. *Brown* and *Robeson* v. *Roberts, supra.*

I concede that it is a familiar general principle, that no man can confer a greater interest in, or better title to, personal property than he has himself, but I deny that it has any application where the legal title in a promissory note has been vested in an assignee by indorsement, without notice of equities in favor of third persons. The quotation in the opinion of the majority of the court, taken from the opinion in *Robeson* v. *Roberts, supra,* was taken by the writer of that opinion from the American Notes to *Basset* v. *Nosworthy,* 2 Lead. Cas. Eq. 51; but following the above quotation the following language is used:

"This, however, is only true when the question arises

between mere equities, for if the subsequent purchaser has obtained a legal title or a legal superiority or advantage of any sort, in good faith and for value, equity will refuse to interfere for the purpose of taking it away from him: *Baggarly* v. *Gaither*, 2 Jones Eq. 80; and may even hold that his greater diligence or good fortune gives him a better right in equity as well as at law. *Judson* v. *Corcoran*, 17 How. 612. Thus, it is well known that the right given by an indorsement for value of a bill or note, payable to order, will have a preference over a prior lien or transfer made apart from the instrument, and not written or indorsed upon it; because the one is at best a mere equity, while the other passes the legal title. The same principle applies when stocks or other securities of a similar nature are in question, which are so far negotiable as to give each successive assignee a right which he may enforce or assert, in his own name, without being obliged to have recourse to that of the first bidder; and those who take the precaution to procure a transfer in due course of law, will be preferred to others whose equity may be prior in point of time, but who have failed to secure it by the proper legal formalities. *The Commercial Bank, etc.*, v. *Kortright*, 22 Wend. 354; *Delafield* v. *The State of Illinois*, 26 Wend. 192."

The foregoing has an important bearing upon the question under examination, for it settles that a person who has the legal title to a promissory note holds it freed from all equities in favor of third persons. As we have seen, it was held by this court, in *Stoner* v. *Brown*, *supra*, that the indorsement of a promissory note vested the legal title in the assignee. By the indorsement of the note in suit, the legal title was vested in the appellant, but the legislature, in the above quoted section, has provided that he took it subject to such set-off and defences as the makers could have made if sued by the payees. What defence could the makers have made if sued by the payees? They could not have set up an equity in favor of a third party. The condition of the appellant is better than that of the payee would have been. By the investment of his money in the purchase of the note he became the equitable owner, and by

the indorsement of the note he acquired the legal title. Nothing is better settled than that a mere equity can not prevail against the legal title. Equities being equal, the law must prevail. *Judson* v. *Corcoran, supra.* The effect of the decision in the present case is, that the assignee, by indorsement of a promissory note, takes it subject to the latent equities in favor of a third person, of which he had no notice. I do not believe it is the law. I think the legislature has gone far enough when it provided that the assignee shall take subject to a set-off and defence in favor of the maker against the original payee or assignor. I do not believe we have the power to impose additional burdens to those fixed by the legislature.

The most of the cases cited in the opinion of the majority of the court relate to the sale of personal property and the equitable assignment of choses in action. In my opinion, the judgment of the court below should, for the reasons stated, be reversed, with directions to render judgment in favor of the appellant upon the special findings of the jury.