# WHEELING.

Tingle Adm'r of Forsyth v. Fisher *et al.*

Submitted August 19, 1880—Decided November 11, 1882.

(*Snyder, Judge, Absent.)

1. To constitute an assignment in equity of a debt or other chose in action no particular form is necessary; though an assignment of a debt secured by another deed of trust was written on a copy of a deed of trust, which had secured the same debt which was

*Cause submitted before Judge S. took his seat on the bench.

63

released and in terms, referred "to the debt secured by the deed, of which the within is a copy," the relation of the parties, and the surrounding circumstances showing, that the assignor, intended to appropriate to the assignee, and the assignee so understood and accepted it, the debt, which was secured by another trust-deed, it will be sufficient to pass to the assignee the debt so secured. (p. 505.)

2. The assignment of a debt or chose in action, by force of law as an incident thereto, carries the deed of trust, which secures the debt. (p. 506.)

3. As between prior and subsequent assignees of the same debt it is not necessary to the validity of the first assignment, that notice thereof should be given to the debtor. (p. 510.)

4. There being no legal title in the assignees of *a chose in action*, and the equities being equal, he, who is first in time, has the better right. (p. 510.)

5. An assignment of a *chose in action* whether general or special is not required to be recorded. (p. 510.)

6. The words "goods and chattels" as used in our recording acts do not embrace *choses in action*, but only personal property, which is visible, tangible and movable. (p. 511.)

Appeal from and *supersedeas* to a decree of the municipal court of Wheeling, rendered on the 25th day of May, 1879, in a suit in chancery in said court then pending, wherein George R. Tingle, administrator of James H. Forsyth, deceased, was plaintiff, and Benjamin Fisher and others were defendants, allowed upon the petition of said Tingle.

Hon. Gibson L. Cranmer, judge of the municipal court of Wheeling, rendered the decree appealed from.

JOHNSON, PRESIDENT, furnishes the following statement of the case.

On the 17th day of January, 1856, James H. Forsyth and Ellen, his wife, executed a deed, to John F. Hopkins granting unto the said Hopkins, "all that parcel of land in said city covered by a large brick warehouse now occupied by the firm of Forsyth & Bain, which parcel of land fronts on Fourth street on the east and on Market street on the west and is one hundred feet wide from north to south, and includes the whole of lots Nos. 3 and 7, and the north half of each of the

lots Nos. 4 and 8, in the thirteenth square of said city. But whereas the said warehouse was erected by Robert Forsyth and James H. Forsyth jr., sons of the parties of the first part, at an expense of eleven thousand and fifty-eight dollars and forty cents, of which the said Robert Forsyth and James H. Forsyth jr., each contributed one-half (or $5,529.20); and the said parties of the first part desire to secure to them the repayment of the sums by them respectively contributed, as aforesaid, with interest thereon from the first day of July last (1855) until paid. Now therefore this deed is made in trust, to secure to the said Robert Forsyth and James H. Forsyth jr., each the said sum of five thousand five hundred and twenty-nine dollars and twenty cents, with interest thereon from the first day of July last (1855) until paid. For the purposes of this deed the trustee may sell the property hereby granted, or any part thereof, at public auction in said city, for cash, or on a credit, in whole or in part, after having given thirty days' notice thereof by advertisement, published in some newspaper, printed in said city, and being thereto requested, by the said Robert Forsyth and James H. Forsyth jr., or either of them, or either of their legal representatives or assigns; but no such sale shall be made until after the death of said Ellen."

On the 4th day of August, 1868, James H. Forsyth and Ellen, his wife, conveyed the said property mentioned in the deed hereinbefore mentioned to Thomas G. Culbertson, also, another property mentioned in said deed, being the south part of lot No. 3, in Updegraff's addition to the city of Wheeling, in which conveyance Robert Forsyth joined. And in said deed the said Ellen Forsyth, by virtue of the power, vested in her by a former deed, not a part of this record, " disposed of and appointed the fee simple in the above described lots 3 and 7 and north half of lots 4 and 8 in square 13 to the said Thomas G. Culbertson, his heirs and assigns forever." As appears by the record, James H. Forsyth jr., died in 1867, intestate and without issue; and his lien upon the foundry property thereby vested in his father, James H. Forsyth the elder.

On the same day that the foregoing deed was executed, the said Thos. G. Culbertson and Martha, his wife, executed a deed

of trust, conveying "the whole of lots 3 and 7 and the north half of lots 4 and 8 in square 13, in the city of Wheeling, reciting, that it is the same piece of ground, on which is erected a building known as the "Forsyth warehouse," also the south part of lot No. 3 in Updegraff's addition, to Josiah F. Updegraff, in trust to secure the payment of twenty thousand dollars, due and owing by the said Thomas G. Culbertson to the said James H. Forsyth of the city of Wheeling and Robert Forsyth of the city of Chicago in the State of Illinois, payable to the said James H. Forsyth and Robert Forsyth, their legal representatives or assigns at the death of Ellen, the wife of said James H. Forsyth, or, (at the option of the said Thomas G. Culbertson) ten years after the date of these presents, and in either event without interest, until the same becomes payable as aforesaid," and also to secure an annuity of one thousand six hundred dollars per annum to Ellen Forsyth for her separate use, and four hundred dollars per annum to James H. Forsyth, the annuities to cease when the twenty thousand dollars become payable.

By three deeds dated respectively, October 1, 1868, December 18, 1869, and February 5, 1872, Culbertson and wife conveyed the foundry-property to Benjamin Fisher. The first deed was for one undivided half; the second for an undivided twelfth; and the third for an undivided five-twelfths thereof.

Upon a copy of the deed of trust from James H. Forsyth and Ellen, his wife, executed to John F. Hopkins, trustee, on the 17th day of January, 1856, to secure Robert Forsyth and his brother James each five thousand five hundred and twenty-nine dollars and twenty cents with interest from July 1, 1855, is the following: "Being indebted to my father, James H. Forsyth, in the sum of four thousand five hundred dollars with interest at six per cent. from May 31, 1871, I hereby assign and transfer to him, as security therefor all my right and claim under the deed of trust, of which the foregoing is a copy." This writing has no date but it is written at the foot of a copy of the trust-deed, certified by the then recorder of Ohio county on the 18th day of January, 1872; and James H. Forsyth died November 15, 1877. It was probably written in 1872, certainly before November 15,

1877.    To show that it was probably written in 1872, Robert Forsyth's deposition in the cause shows, that he received four thousand five hundred dollars from his father in 1871. Again, the four thousand five hundred dollars mentioned in the writing bears interest from May 31, 1871.

On the 30th day of July, 1878, Robert Forsyth by writing under seal, duly acknowledged, made to Logan D. Wallace, after reciting the consideration provides: "hath sold and by these presents doth sell, assign, transfer, and set over, unto the said party of the second part (Logan D. Wallace) that certain debt, due from Thomas G. Culbertson of Wheeling in the State of West Virginia to the said party of the first part, amounting to the sum of ten thousand dollars, and witnessed by a certain deed of trust executed by said Thomas G. Culbertson, grantor, to one Josiah F. Updegraff, grantee, in trust, bearing date August 4 A. D. 1868, and recorded in the office of the clerk of the county court of Ohio county, in the State or West Virginia (book 52, page 556) with full power to sue for, to collect and discharge, sell and assign or otherwise dispose of the same in my name but at his own costs and charges.    And I do hereby covenant, that the above sum of ten thousand dollars is justly due me according to the terms and provisions of the said deed of trust above mentioned, and the same is payable at a time mentioned in said deed within ten years from the date thereof or at the death of Ellen Forsyth mentioned and described in said deed, at the option of said Culbertson."    Of this assignment the said Wallace gave notice to Thomas G. Culbertson and Benjamin Fisher about the 3d day of August, 1878, a few days after it was executed.    Wallace had no notice of the assignment to Forsyth.    The assignment of Wallace was recorded August 5, 1878.    On the said 5th day of August, 1878, Benjamin Fisher gave notice in writing to George R. Tingle, administrator of James H. Forsyth, deceased, to Logan D. Wallace, and to Robert Forsyth, that he elected to pay the said sum of twenty thousand dollars.    In March, 1879, George R. Tingle, administrator of James H. Forsyth, deceased, filed his bill in the municipal court of Wheeling for the purpose of settling the estate of the said James H. Forsyth, and among other things claimed the four thousand five

hundred dollars and interest, from May 31, 1871, by virtue of the alleged assignment, by Robert Forsyth to his intestate, and also alleged, that Logan D. Wallace claimed the same fund by virtue of the assignment to him. Logan D. Wallace answered the bill claiming the whole of said ten thousand dollars by virtue of the assignment to him, claiming he was an innocent purchaser of the debt without notice of the assignment to Forsyth; that the alleged assignment did not pass the debt to James H. Forsyth, because the trust, on a copy of which it was made, had long before that time been released, and it was not the same debt, which said Robert assigned to him; that Robert was not indebted to his father but, that Robert's father was indebted to him. He also claimed, that he promptly notified the debtor of the assignment to him, and that the debtor before that time had no notice of the alleged assignment to James H. Forsyth; that before his purchase of the debt he examined the records of Ohio county and found no evidence of an assignment of said debt to any one, and believes there is no record of an assignment of said debt except the one to him.

In this answer there was a general replication.

Benjamin Fisher paid the twenty thousand dollars into court. By a decree entered in the cause on the 8th day of July, 1879, the moneys were disbursed except the fund in dispute between the administrator and Logan D. Wallace. On the 25th day of May, 1880, upon a further hearing of the cause the court decreed, that Logan D. Wallace was entitled to the fund the four thousand five hundred dollars with its interest, and decreed it to be paid to him.

To this decree an appeal and *supersedeas* was granted by this Court.

*Daniel Lamb* for appellant cited the following authorities : 3 Ves. 306; 15 Eng. Law and Eq. 4; 4 Sandf. 579; 4 DeG. &. J. 531; 26 Gratt. 112; 7 Cranch. 34, 50; 11 O. St. 283; 1 Green. Ev. § 297; 15 O. St. 246; 73 N. Y. 511; 24 N. Y. 40; Brown Leg. Max. (6th Am. Ed.) 400; 9 Mass. 242; 8 Conn. 389; 14 Conn. 334; 16 Pick. 22; 4 John. Ch. 65 ; 1 Lead. Cas. Eq. (4th Am. Ed.) pt. 11 p. 874; 4. Leigh 88; 26 Gratt. 638; 2 Lead. Cas. Eq. pt. 1 p. 54; 3 Russ. 1, 6;

17 How. 612; 3 Leigh 597; 3 Hill 228; 50 N. Y. 66; 64 N. Y. 224; 55 N. Y. 41; 61 N. Y. 593, 104; 9 Barr. 404; 113 Mass. 129; 48 Ind. 230; 1 Ves. Jr. 249; 4 Dels. F. & J. 208; 3 W. Va. 316; 13 W. Va. 718; 14 Gratt. 13, 44; Code.

*William P. Hubbard* for appellees cited the following authorities : 19 Gratt. 354; 2 Lead. Cas. Eq. pp. 83, 1661; 29 Barb. 505; 2 John. Ch. 441; 3 Leigh 597; Law Jour. Nov. 1879, p. 658; 1 Wall. 604, 624; 9 Barr. 399; L. R. 1 Eq. Cas. 121; 25 Ver. 593; 3 Mon. 510; 8 Mich. 395; 1 Add. Cont. § 428; 2 Sto. Eq. Jur. § 1047; 3 Lans. 169; 9 Wisc. 503; 31 Pa. St. 142; 27 Mich. 52; 3 W. Va. 316; 13 W. Va. 718; Code; 2 Bouv. Dict. 198; 3 N. J. Eq. 14; 25 Ver. 666; 64 N. Y. 220; 29 Barb. 505; 8 Allen 165; 46 Barb. 399; 22 Tex. 464; 18 Pa. St. 334, 401; 15 Mass. 233; 33 Me. 197; 44 Me. 286, 303; 46 Me. 270; 47 Me. 507; 68 Me. 71; 77 Pa. St. 373; 18 Minn. 241; 10 N. J. L. 156, 184; 27 Me. 237; 5 John. Ch. 214; 2 Blatchf. 150; *Id.* 160; 1 Sto. Eq. Jur. §§ 108, 139, 165, 436.

*Logan D. Wallace* for appellees cited the following authorities: 2 John. Ch. 630; Wright (Pa.) 327; 4 Blatchf. 432; 10 Ver. 452; 15 Ver. 576; 17 Ver. 183; 11 Ver. 138; 6 H. & J. 435; 80 St. 104; 7 Wait Ac. & Def. 328; 26 N. J. Eq. 434; 10 C. E. Green 48; 1 Ves. 317; 1 Bro. 94; 6 Ves. 328; 5 Mas. 572; 1 Clarke. 101; 3 S. & M. 67; 4 Scam. 13; 11 Ohio 283; 1 Atk. 177; 3 Day 364; 4 Mass. 508; *Id.* 450; 1 Add. Cont. (3rd Am. Ed.) 600; 23 Ver. 532; 1 Wheat. 233; 1 Dow. 50; 2 John. Ch. 442; 55 N. Y. 41; 9 Pa. St. 404; 1 Bay. 246; 37 B. Mon. 510; 29 Me. 15; 90 Mass. 165; 4 Mass. 450; 1 Atk. 165; 5 Denio. 187.

JOHNSON, PRESIDENT, announced the opinion of the Court:

The only question to be decided is: Who is entitled to the fund in dispute, the administrator of the estate of James H. Forsyth, or Logan D. Wallace? In deciding this question, the first enquiry is: Did the writing by Robert Forsyth on the copy of the trust-deed of January 17, 1856, assign any interest in the debt, secured to said Robert in the deed from Culbertson and wife to Updegraff, trustee, which was executed on the 4th day of August, 1868?

It is asserted by counsel for appellee, that no interest in the debt secured by the trust to Updegraff passed by that assignment because the language there used, does not describe the debt, which was subsequently assigned to Logan D. Wallace. In the case of *Shirras* v. *Caig*, 7 Cranch. 50, Marshall C. J. says of the description of the debt in that case : "It is true that the real transaction does not appear on the face of the mortgage. The deed purports to secure a debt of thirty thousand pounds sterling due to all the mortgagees. It was really intended to secure different sums due at the time, to particular mortgagees, advances afterwards to be made and liabilities to be incurred to an uncertain amount. It is not to be denied, that a deed, which misrepresents the transaction, it recites, and the consideration, on which it is executed, is liable to suspicion. It must sustain a rigorous examination. It is certainly always advisable, fairly and plainly to state the truth. But it upon investigation the real transaction shall appear to be fair, though somewhat variant from that which is described, it would seem to be unjust and unprecedented to deprive the person claiming under the deed of his equitable rights, unless it be in favor of a person, who has been in fact injured and deceived by the misrepresentation.

The rule in ethics as well as law is, that when the terms of a promise admit of more senses than one, the promise is to be performed in that sense, in which the promissor apprehended it at the time the promissee received it. *White* v. *Hoyt et al.*, 73 N. Y. 511. As a rule the interpretation of written instruments is with the court as a question of law; but where the interpretation depends upon the sense, in which words are used, or the sense, in which the promissor had reason to believe the promissee understood them, a fact to be determined by the relation of the parties and the surrounding circumstances, it would seem that it became a mixed question of law and fact. *White* v. *Hoyt et al.*, 73 N. Y. 512.

In *Eacho* v. *Cosby*, 26 Gratt. 112, a deed of trust was made "to secure to Edward D. Eacho of the city of Richmond the payment of the sum of one thousand dollars due by note drawn by the said Andrew J. Cosby and payable eleven months after date, and negotiable and payable at the Plant-

er's National Bank of Richmond." It was ascertained, that the note was not executed by A. J. Cosby. Nevertheless, as it appeared, that there was a debt owing by Cosby to Eacho, the description in the deed was rejected to give effect to the security; for it was manifest from the circumstances, what the parties must have intended.

Mr. Justice Wayne in delivering the opinion of the court in *Spain* v. *Hamilton's administrator*, 1 Wal. 624, said: "To constitute an assignment of a debt or other chose in action in equity no particular form is necessary. A draft drawn by A or B in favor of C for a valuable consideration, amounts to a valid assignment to C of so much of the funds of A, in the hands of B. Any order, writing or act, which make an appropriation of a fund, amounts to an equitable assignment of the fund.

Under these authorities, taking all the surrounding circumstances into consideration, is there any doubt, that Robert Forsyth intended to assign to his father forty-five hundred dollars of the indebtedness of Thomas G. Culbertson to him, which was secured to him in the deed of trust, from Culbertson and wife, to Updegraff, trustee? True, he did not correctly describe the debt. The language is: "I hereby assign and transfer to him as security therefor, all my right and claim under the deed of trust, of which the foregoing is a copy." It must be remembered, that while it is true, that that deed of trust had been released, as to Robert, by his joining in the conveyance to Culbertson on the 4th day of August, 1868, yet on that same day Culbertson and wife executed the deed of trust to Updegraff, in which the same debt to Robert was secured. Long subsequent to this when the assignment in 1871 or 1872 was made to James H. Forsyth by Robert, both were perfectly familiar with the debt, which had been secured by the deed of 1856, and the new security taken therefor in 1868; and there can be no doubt, that when Robert made the said assignment, he intended to appropriate to his father, of that debt four thousand five hundred dollars with interest thereon from May 31, 1871, and that James H. Forsyth so understood and so accepted it. It would be taking in a court of equity, a very narrow technical view to hold, that inasmuch, as there was in

the deed, on a copy of which the assignment was written, at that time no debt secured, therefore it was not intended, that any debt should be assigned. That deed had been the representative of the debt. The debt was still due to Robert and secured by another trust, and it was an appropriation of a part of that debt.

But it is claimed, there was no consideration for the assignment. The previous indebtedness of Robert to his father, there expressly admitted was ample consideration. The assignment of four thousand five hundred dollars of the debt, and interest thereon, carried with it by operation of law as an incident the deed of trust, by which the money was secured to be paid. *Gwathmeys* v. *Ragland*, 1 Rand. 466; *McClintic* v. *Wise's Adm'r.*, 25 Gratt. 448; *Grubb* v. *Wysor*, 32 Gratt; 127; *Gregg* v. *Sloan and als.*, 6 Va. Law Jour. 607. Robert Forsyth having first assigned four thousand five hundred dollars with interest from May 31, 1871, of the debt secured by the trust deed to Updegraff, this carried with it so much of the said lien, as is necessary to pay it. *McClintic* v. *Wise's Adm. supra.* Having made this assignment, he could not again assign it to Wallace, so as to give Wallace a right thereto, unless by the laches of James H. Forsyth, he lost his right thereto.

It is claimed by counsel for appellee, that the second assignment will take the whole fund, because, no notice of the first was given to the debtor, before the second assignment was made. I find no authority, which holds, that the second assignee must be notified, except those that require assignments to be recorded. In no other way could notice be brought home to the second assignee, unless it would be through the debtor. Is it necessary to notify the debtor? Upon this question there is conflict of authority. In *Judson* v. *Corcoran*, 17 How. 615, Mr. Justice Catron in delivering the opinion of the court, said: "The assignment was held up, and operated as a latent and lurking transaction calculated to circumvent subsequent assignees; and such would be its effect upon Corcoran, were priority acceded to it under our decree. It is certainly true as a general rule, as above stated, that a purchaser of a *chose in action*, or of any equitable title, must abide by the case of the person from whom he

buys, and will only be entitled to the remedies of the seller; and yet there may be cases, in which a purchaser, by sustaining the character of a *bona fide* assignee, will be in a better situation, than the person was of whom he bought; as, for instance, when the purchaser, who alone had made inquiry, and given notice to the debtor, or to a trustee holding the fund, (as in this instance) would be preferred over the prior purchaser, who neglected to give notice of his assignment and warn others not to buy." He cites as sustaining the proposition *Dearle* v. *Hall and Loveridge* v. *Cooper*, 3 Russell 1, 60; *Mongles* v. *Dixon*, 1 *McNaughton & Gordon*, R. 437; *Bayley* v. *Greenleaf*, 7 Wheat. 46; *Murray* v. *Lylburn*, 2 John. Ch. C. 442. He also claims, that the same principle was applied in *Moore* v. *Holcombe*, 3 Leigh 597.

I do not think the last case in point; that was a bill in equity to subject land to sale, for the purchase-money an equitable lien, of which the purchaser had no notice was attempted to be set up. The principle that the purchaser of real estate without notice of an outstanding equity, takes it discharged of such equity, has no application in the case of a purchaser of a *chose in action*. *Summers* v. *Hutson et al.*, 48 Ind. 230.

The doctrine held in *Judson* v. *Corcoran*, is also sustained by *Spain* v. *Hamilton*, 1 Wall. 604; *Mott* v. *Clark*, 9 Barr. 399; *Ward* v. *Morrison*, 25 Vt. 593; *White* v. *Prentiss*, 3 Mon. 510; *Bloomer* v. *Henderson*, 8 Mich. 395, and a number of authorities to the same effect cited in Leading Cases in Equity, vol. 2, part 2, 1165–6. Many authorities are found which hold directly to the contrary. *Muir* v. *Schenck*, 3 Hill 228; *Schafer* v. *Riley*, 50 N. Y. 66; *Moore* v. *Metropolitan Bank*, 55 N. Y. 41; *Greentree* v. *Rosenstock*, 61 N. Y. 593; *Trustees* v. *Wheeler*, Id. 104; *Summers* v. *Hutson*, 48 Ind. 230; *Wakefield* v. *Martin*, 3 Mass. 558; *Dix* v. *Cobb*, 4 Mass. 508; *Wood* v. *Partridge*, 11 Mass. 488; *Providence County Bank* v. *Benson*, 24 Pick 204; *Martin* v. *Potter*, 11 Gray 37; *Richards* v. *Smith*, 9 Gray 315; *Kingman* v. *Perkins*, 105 Mass. 111; *Thayer* v. *Daniels*, 113 Mass. 132; *Newby & Taylor* v. *Hill & Million*, 2 Met. (Ky.) 530; *Kamena* v. *Huelbig & als.*, 23 N. J. Eq. 78, and cases cited in Leading Cases in Eq. vol. 2, part 2, 1166.

In the 2d vol. Leading Cases in Equity 1667, it is said: "It is now established in England contrary to the earlier decisions, that the failure to give notice, of an assignment is immaterial, as regards one claiming under the assignor as a creditor or volunteer it being a general, if not invariable rule, that one cannot give, what he could not justly hold, and that the right of a creditor, does not rise higher than that of the debtor, and is subject to all equities that could have been enforced against him." In support of the above the following authorities are cited: Bishman's Eq, § 168, *Beavan* v. *Earl Oxford*, 6 De Gex M. & G. 492; *Kendricky* v. *Jervis*, 22 Beavan 1; *Pickering* v. *The Ilfeacombe Railroad Co.*, 3 L. R. C. P. 235, 248.

In *Gwathmeys* v. *Ragland*, 1 Rand. 466, it was held that, where a debtor executes several notes to his creditor and gives a deed of trust to secure their payment, and the first note is paid, and the creditor assigns the second note to a third person without assigning the deed of trust, and then assigns the third note to another person together with the deed of trust, the assignor of the second note is entitled to be first satisfied out of the trust fund. In delivering the opinion of the court Judge Brooke said: "The deed being assigned to the appellants, gave them full notice of the order, in which the notes were to be paid to Barrett or his assigns, and at least put them on enquiry, whether the first and second notes had been paid at the time, they took the assignment of the third note and the deed of trust. By not making that enquiry, if they relied on the trust-fund, as security for the payment of the notes assigned them, they may have lost their money. *However that may be, as against the appellee, to whom no negligence or fraud is imputable, the Court is of opinion, they have no claim to be preferred.*" Here, there is no pretense that the assignor of the second note gave notice to the debtor of the assignment to him.

In *McClintic* v. *Wise*, 25 Gratt., W. sold land to M. retaining the title for four thousand one hundred dollars cash, one thousand dollars, and three bonds payable January 1, 1858, 1859 and 1860. The first was paid to W. He transferred the bond due January 1, 1860, to S. in May, 1859, who assigned it to H. W. died in possession of the bond due Jan-

uary 1, 1859.  His administrators sued M. in equity to subject the land to pay the bond held by W. at his death, without making S. or H. a party.  The land was sold by a commissioner to J. for two thousand dollars, and the sale was confirmed, and commissioner was directed to collect the money and pay the plaintiffs.  H. upon his petition is made a defendant in the suit, and files his answer, claiming, that his bond is still unpaid, and that he is entitled to priority of payment of the land.  The administrator filed an answer insisting, that H. had lost his right to subject the land by his laches in not suing M. who had in the meantime become insolvent.  The decree gave prirority to plaintiffs; and H. appealed; it was held, that H. was entitled to be first paid out of the proceeds of the land.  It was further held, that when there are several debts secured, and there are successive assignments of them, the first assigned carries with it so much of the lien, as is necessary to pay it, unless it is expressly provided otherwise.  See also, *Grubb* v. *Wysor*, 32 Gratt. 127.

In *Gregg* v. *Sloan et als.*, 6 Va. L. Journal 607, it appeared, that merchants of North Carolina made a deed conveying to trustees all their property for the benefit of their creditors. Among other things embraced in the deed was a *chose in action* due by a debtor in Virginia and secured on real estate in Virginia, *subsequent* to the making and recordation of the deed in North Carolina, but *prior* to its recordation in Virginia, a creditor of the grantees living in Virginia filed his bill and attempted to attach the *chose in action*, and bond conveyed to secure it.  In a contest between the grantees in the deed and the attaching creditors it was held, that the *chose in action* and security for its payment passed by the deed to the trustees, and the deed being prior to the attachment prevails over it.  Neither in this, nor the other Virginia cases which we have cited, were there any claim, that notice to the debtor would make any difference, as between the prior and subsequent claimants of the fund; but the principle in all the cases prevails, that where the equities are equal, he, who is first in time has the better right.

Judge Green said in *Garland* v. *Richeson*, 4 Rand. 270: "If the court had held, that the legal title to the debt passed

by the assignment, then they could not have held, that any equity against the bond not coming within the description of *discounts* could bind the assignee without notice of the equity; as, if the equity was founded on a fraud in the consideration of the bond, this could be no defense at law, not being a *discount;* and after judgment for the assignee at law, if the debtor applied for relief on that ground to a court of equity, a plea, that the assignee was a *bona fide* purchaser of the legal title to the debt secured by the obligation without notice or any equity, would be a complete defense, on the maxim, of the court of equity, which is without exception, that he, who has the legal title and equal equity, must prevail in that court; and a purchaser without notice has a perfect equity. But where a purchaser acquires only an equitable title, the maxim is, *qui prior est tempore, potior est jure.*

In *Clarke* v. *Hogeman*, 13 W. Va. 730, we said: "The only party entitled to notice of the assignment, and the only party who not having notice, for that reason would be protected is the judgment-debtor." *Bank* v. *Gettinger*, 3 W. Va. 317. *Harrison* v. *Farmer's Bank*, 9 W. Va. 424. So we say here, if no notice had been given to the debtor by J. H. Forsyth or by his administrator, and the debtor had paid the debt to the second assignee, the debtor would have been discharged. We see no countenance given in the Virginia authorities to the doctrine, that to perfect the claim of an assignee of a chose in action against a subsequent assignee of the same debt, notice to the debtor is necessary. It is true, that it has been frequently held elsewhere, as we have seen, that in such a case notice to the debtor is necessary to give the first assignee a right to the debt. There is no legal claim to the *chose in action* assigned in this cause, in either of the assignees. The equities being equal, the first assignment to the extent thereof will take the fund. But it is claimed by counsel for appellee, that the recordation of the assignment by Wallace, will give him a right to the debt secured by the trust-deed, as against Forsyth's administrator, the first assignment not being recorded. There is nothing in this position. The assignment of a chose in action, whether special or general, is not required to be recorded. Our recording acts are the same as the recording acts in Virginia;

and it has been expressly held in that State, that they do not embrace *choses* in action.   The words "goods and chattels," as used in our recording acts, do not include a mere *chose* in action as a debt, or claim on another for money due.   These words refer to and only include, personal property which is visible, tangible or movable.   *Kirkland, Chase & Co.* v. *Brune et als.* 31 Gratt. 126; *Gregg* v. *Sloan et als.* 6 Va. Law Journal 607; *Bank* v. *Gettinger*, 3 W. Va. 317.

For these reasons the decree of the municipal court of Wheeling rendered in this case on the 25th day of May, 1880, is reversed, with costs to the appellant, which costs must be paid by Logan D. Wallace; and this cause is remanded to said municipal court of Wheeling for further proceedings to be had therein, according to the principles herein announced, and further according to equity.

JUDGES HAYMOND AND GREEN CONCURRED.

JUDGMENT REVERSED.   CAUSE REMANDED.