# CHARLESTON.

FLESHMAN, TRUSTEE v. HOYLMAN et al.

Submitted January 15, 1886.—Decided February 25, 1886.

1. On April 26, 1878, " H." owed "F." $1,131.16 payable in four years, secured by bond and deed of trust : On March 7, 1879, "F." by formal deed assigned this debt to "B. F." trustee, for the benefit of certain children and grandchildren of " F." and delivered the bond to such trustee.   On May 25, 1880, "H." procured from " F." a receipt for $400.00 to apply as a credit on the bond, but *nothing had in fact been paid* thereon, nor was there *in fact anything due from " F." to " H."*   On November 29, 1881, without the consent of the trustee or beneficiaries, " F." executed and acknowledged a formal release of the deed of trust which had been executed to secure the $1,131.16.   "F." having died soon afterwards, the trustee " B. F." brought suit in chancery to annul and set aside said receipt and release, and to enforce payment of the balance of the debt remaining unpaid, by sale of the trust property; HELD :

I. That an assignment of a chose in action, is not one of the writings required by our recording acts to be recorded ;

II. That "F." having by absolute deed of assignment assigned the debt of $1,131.16 and delivered the bond to the trustee, the assignment became irrevocable, and he had no longer any control over it, and that said " receipt " and " release " were both inoperative against the trustee and the beneficiaries in the deed of assignment ;

III. That a court of equity has jurisdiction of a suit brought to annul and set the receipt and release aside;

IV. That having taken jurisdiction of such a suit, and annulled and set aside the " receipt" and "release," it will grant the plaintiff full relief, by entering a personal decree against " H." for balance of the debt still unpaid, and order the trust property to be sold to pay the same.   (p. 739.)

2. In any suit brought by a trustee for the trust-debt, where the trustee may possibly occupy the position of purchaser of the trust-property, it is the duty of the court to direct a sale of the property by a special commissioner other than such trustee. (p. 740.)

*John W. Harris* for appellant.

*William P. Rucker* for appellee.

WOODS, JUDGE:

George W. Hoylman on October 20, 1860 being indebted to his father-in-law, Michael Fleshman, then over seventy years of age, in the sum of $1,000.00 executed to him his note therefor payable on October 20, 1865, with interest from that date, and on the same day executed a deed of trust to his brother-in-law B. F. Fleshman as trustee to secure the payment thereof, with power to sell in case of default of payment, which deed of trust was duly acknowledged and recorded in the proper county.

On June 1, 1871, the interest on the $1,000.00 debt was calculated and added to the principal, and said George W. Hoylman executed to said Michael Fleshman another note for $1,637.00 the aggregate of principal and interest, due on the former note with interest from that date, and payable on June 1, 1876, in renewal thereof, and to secure the payment of this second note he executed a second deed of trust upon the same lands to the same trustee, with power of sale in case of default in the payment of the $1,637.00 note, in all respects similar to the first. On April 26, 1878, without anything having been paid thereon, or claimed by George W. Hoylman to have been paid thereon, the interest was again calculated on the $1,637.00 note, and added to the principal and being then interrogated by Michael Fleshman whether he had anything else (referring to a claim of about $800.00 for which he claimed credit before and at the time he executed the second note for $1,637.00 which was then repudiated and disallowed, which will be referred to hereafter) "he replied, I have not." Michael Fleshman then called his attention specifically to some articles of clothing furnished him by Hoylman, and also to the fact that he had boarded in the family of Hoylman—at one time for the *period of ten years*, but Hoylman declared that he made no charge and claimed no credit on the debt for any of these matters. To this Michael Fleshman replied, "*if you have not I have*," and drew from his pocket a paper containing a list of the articles which had been so furnished him by George W. Hoylman, "which he had never paid for, but which he intended to pay for." He required the witness who was making the calculation to put down the items as he gave them

out, which was done. Among these was the price of a suit of clothes and of some dry goods and other items which had been furnished him, to add up the sums and see what they amounted to, and deduct it from the amount due him on the bond, and then to calculate interest on the balance for three years and to add it to the principal, which the witness did and ascertained the amount to be $1,131.16. He then directed the witness to draw a bond for that amount for Hoylman to sign payable in three years (the bond and deed of trust shows four years) after date, and then write a deed of trust for Hoylman to B. F. Fleshman trustee to secure the bond for $1,131.16 which was done, and Hoylman signed the bond and acknowledged the deed of trust both of which were dated April 26, 1878.

This deed of trust conveyed to the trustee the same lands, and also twenty head of stock cattle, six milch cows, two yoke of oxen, two wagons and one buggy, to secure the debt of $1,131.16 and contained a power to sell, in all respects similar to that in the former deeds of trust save only that the power to sell, was postponed for the period of one year after the bond should become payable.

The last named deed of trust was acknowledged on the day of its date, and recorded in the proper county on October 25, 1878.

On March 7, 1879, Michael Fleshman by formal deed of that date assigned and transferred to B. F. Fleshman, as trustee, for the benefit of certain of his children and grand children therein named, in definite amounts and proportions, all the debts due to him, including the bond of George W. Hoylman for $1,131.16, which with all other evidences of the debts so assigned were delivered to the trustee, of which assignment George W. Hoylman, as early as May 10, 1880, had actual notice.

On May 25, 1880, George W. Hoylman obtained from Michael Fleshman the following receipt:

"Received of George W. Hoylman $400.00, to be credited on a bond I hold against him, now in the hands of B. F. Fleshman, and for which there is a lien on record in the clerk's office of Greenbrier county, State of West Virginia, on the real and personal estate of said George W. Hoylman, exe-

:uted to B. F. Fleshman, as trustee, for my benefit. The said $400.00 is due the said George W. Hoylman on settlement made with him this day, and it is to be credited on the said bond of about $1,100.00, and is to bear no interest until my said bond of about $1,100.00 is due.

"Given under my hand and seal this May 25, 1880.

his
"MICHAEL X FLESHMAN. [SEAL.]
mark.

"Wittess:—MANERVA S. MATHEWS."

And on November 29, 1881, he obtained from Michael Fleshman the following release:

"I, Michael Fleshman, do hereby release a deed of trust made by George W. Hoylman to Benjamin Fleshman, my trustee, dated April 26, 1878, and recorded in the clerk's office of the Greenbrier county court, West Virginia, in deed-book No. 30, p. 505, of the records of said office.

"Given under my hand this November 29, 1881.

"MICHAEL FLESHMAN."

This release was duly acknowledged, and on the day after its date, was recorded in Greenbrier county. Michael Fleshman died in a little more than a year afterwards at the advanced age of about ninety-two years, and B. F. Fleshman was appointed his administrator.

At May rules, 1884, B. F. Fleshman, as trustee, in the deed of assignment made by Michael Fleshman, filed his bill in the circuit court of Greenbrier county, against George W. Hoylman and the beneficiaries mentioned therein alleging in substance, the execution by Michael Fleshman to him of the deed of assignment dated March 7, 1879, and also the execution by Hoylman to Michael Fleshman the bond of $1,131.16, and of the deed of trust dated April 26, 1878, to secure the payment thereof, that the consideration was money loaned many years before by Michael to Hoylman; that the bond had been renewed as hereinbefore stated, and at each renewal a deed of trust had been executed to secure the payment thereof, and made copies of the deeds of trust hereinbefore referred, parts of his bill. He further alleged that on November 29, 1881, George W. Hoylman through fraud and cozen procured Michael Fleshman to execute to him the release of said deed of trust of April 26, 1878; that Michael

Fleshman was then very aged and infirm, and was mentally incompetent to transact any kind of business; that he was kind and easily persuaded, and that having decoyed him from the house of plaintiff where he had lived for many years George W. Hoylman taking advantage of his mental weakness, had fraudulently procured him to execute said release that the release is a nullity; and that the title and actual possession of the bond of $1,131.16 given to secure the same had been assigned and transferred to the plaintiff, as trustee by deed of record, and that of these facts Hoylman had full and actual knowledge; and prayed that the release be annulled and set aside, and Hoylman decreed to pay the amount of the bond and for general relief. Before June 12, 1884 an amended bill was filed, setting forth the additional facts that Michael Fleshman was dead, and that the plaintiff had been appointed the administrator of his personal estate, and praying that the balance due on the land may be ascer tained by a commissioner, the real and personal estate men tioned in the deed of trust dated April 26, 1878, be sold to pay the same and for the relief prayed for in his original bill

George W. Hoylman answered the bill admitting the exe cution of the bond of $1,131.16, and of the deed of trust to secure the same, and that this bond was in renewal of the said bonds of $1,687.00 and of $1,000.00, and of the several deeds of trust to secure the same as hereinbefore stated. He denied that the consideration of either of the first two, or of the last bond was for money loaned, and averred that the consideration was certain paper upon other parties which Michael Fleshman had assigned to him, and which, without default or laches on his part he had failed to collect, and that this amount, he was entitled to by reason of this fact to have credited on his bond, had long been a matter of difference and discussion between them; that on May 25, 1880, the matter of difference was adjusted between them, and Michael Fleshman voluntarily agreed to fix said sum at $400.00, and gave to him the said "receipt" of $400.00; that the balance remaining unpaid upon the bond amounting to $254.46, he then paid to Michael Fleshman, who on November 29, 1881 executed and acknowledged said "release," and that respondent had n

notice actual or constructive, of the so-called assignment or deed of trust from Michael to B. F. Fleshman dated March 7, 1879, until long after this "receipt" and "release" had been executed. He denies that he procured the release by fraud and cozen, or that he took any advantage of said Fleshman in any manner whatever. He relies on the validity of the release, and insists that the same is a complete dis-charge from liability on his bond, and denies that Michael Fleshman was from any cause incompetent to execute the same, and avers he was in the full possession of his mental faculties.

To this answer a general replication was filed.

On July 12, 1884, upon notice to the defendants, the cir-cuit court in vacation made an order referring the cause to a commissioner to state and report :

On June 17, 1885, the commissioner completed his report, whereby it appears that he made alternate statements of the liability of the defendant George W. Hoyelman to the plain-tiff, in one of which he allowed him credit for the $400.00 mentioned in said receipt, and thereby extinguished the bond of $1,113.16, and in the other he disallowed the said credit, and ascertained the balance due on said bond to be $400.00 with interest thereon from April 26, 1882, amounting on June 16, 1885, to the sum of $474.66.

The plaintiff on June 19, 1885, excepted to that aspect of the report which allowed the credit of the $400.00 mentioned in the receipt, dated May 25, 1880.      -

On June 30, 1885, the cause was regularly heard, upon the commissioner's report, the plaintiff's exceptions thereto, and the court upon consideration of the premises by its decree, annulled and set aside the receipt of $400.00, and also the release executed by Michael Fleshman to George W. Hoyl-man, and adjudged, ordered and decreed that B. F. Flesh-man trustee, recover of Hoylman $476.40, with interest from that day and costs, and that unless paid within thirty days, so much of the property mentioned in the last deed of trust as may be necessary to pay the same, be sold by a special commissioner appointed for that purpose.

From this decree George W. Hoylman has obtained an ap-peal and *supersedeas*.

As grounds ot error in said decree the appellant assigns :

First.—There was no prayer in the bill for the enforcemen of the trust-deed, and no allegation of facts, on which such relief could be predicated.

Second.—Because the decree charged the appellant with the sum of $400.00, specified in said "receipt."

Much testimony was taken by the appellee, to show that on May 25, 1880, when the receipt of $400.00 was executed, and on November 29, 1881, when the "release" was executed Michael Fleshman, by reason of his great age, and physica and mental weakness, was destitute of the mental capacity to transact any important business, and that the receipt and the release were for that reason null and void. To rebut this tes timony, the defendant Hoylman examined the witnesses who were present, when the bond of $1,113.16 and the deed of trus to secure the same, and those present when the receipt fo $400.00 and the release were executed, and of many othe witnesses who for many years and up to the time of his death had been intimately acquainted with Michael Fleshman From a careful examination of all this evidence it is perfectly clear to our minds, that Michael Fleshman at the time th " receipt" and " release " were executed, was in the full pos session of his mental faculties and perfectly understood exactly what he intended to do, what he desired to accomplish by his act, and what the legal effect of his act would be, it B. F Fleshman did not have the legal right to prevent it·; and w may dismiss this branch of the controversy, well assured, tha if Michael Fleshman had the right to execute such receipt an release, he has effectually done so.

There is no controversy as to any other amount than th $400.00 specified in the "receipt," with interest thereon fron April 26, 1882, when the bond for $1,131.16 became payable as it is admitted by the plaintiff below, that all the residue o the bond had been paid by Hoylman, and the amounts so pai had been received by the plaintiff in his character of truste under the deed of assignment dated March 7, 1879. It is no pretended by the appellant, that on May 25, 1880, when th receipt for $400.00 was executed, he paid Michiael Fleshma $400.00 or any other sum of money on his bond of $1,131.1 The phraseology of the receipt itself is peculiar, if not suspic

ious.   It was evidently intended to serve a double purpose;
first as a receipt of "$400.00 to be credited on a bond I hold
against him *now in the hands* of *B. F. Fleshman,* for which
there is a lein on record," &c., and second, if it could not
be made effectual for that purpose, then to be made effectual
as the obligation of Michael Fleshman to Hoylman for
$400.00 with interest from April 26, 1882, for in addition to
being a receipt for that sum it concludes, as follows:   "The
said $400.00 is *due the said George W. Hoylman* on settle-
ment made with him this day, and it is to be credited on the
said bond of *about* $1,100.00 and is to bear no interest until
my said bond of about $1,100.00 is due. Given under my
hand and seal this May 25, 1880.

"MICHAEL X FLESHMAN. [SEAL.]

"Witness :—MANERVA S. MATTHEWS."

The evidence in the record shows beyond doubt, what
matters entered into the settlement of May 25, 1880, which
resulted in the receipt of $400.00.   The testimony of the de-
fendant Hoylman himself and of the witnesses examined on
his own behalf, and among them his sons John H. Hoylman
and R. B. Hoylman, makes it perfectly clear, that the con-
sideration of the bond of $1,000.00 executed by Hoylman to
Michael Fleshman on October 20, 1860, secured by the deed
of trust of that date was two bonds assigned to him by said
Michal Fleshman, one on Joseph Myles for about $558.00
and one on Crawford Hull for something over $400.00, that
Hoylman held this bond on Myles until about March 10,
1861; that at that time Michael Fleshman held another bond
on Myles amounting to $1,148.39; that Myles then on his
death bed, had borrowed of John Surbaugh $10,000.00 in
paper; that Michael surrendered to the agent of Myles his
bond of $1,148.39 and accepted in payment, bonds upon one
Stalnaker assigned without recourse; that Hoylman on the
same day, exchanged and surrendered his bond on Myles of
$558.00, and accepted in satisfaction thereof, a bond of said
Stalnaker for the same amount which was assigned to him
without recourse, and in twenty days thereafter Myles died.
Stalnaker having also died, Hoylman on March 28, 1864,
collected from his administrator the sum of $657.26 the

amount of said bond, in Confederate money, and gave his receipt therefor, and at the same time, he and one Luddington executed to the administrator of Stalnaker an obligation to refund to him such portion of the $657.26, as might afterwards be ascertained to be in excess of his ratable proportion of the assets for the payment of debts. Hoylman testified that this Confederate money was a total loss to him. This was the claim referred to in the answer of Hoylman, that had "long been a matter of difference and discussion between him and Michael Fleshman," and which was adjusted in the settlement, which resulted in the receipt of $400.00 dated May 25, 1880. There is no pretense on the part of Hoylman that any other consideration entered into that settlement. Admitting Hoylman's own evidence to be competent, and to be true, it is perfectly clear that he had no legal demand, against Michael Fleshman for any loss which he may have sustained by accepting Confederate money, in satisfaction of the Stalnaker bond. He had held the bond of Myles of $558.00 assigned to him by M. Fleshman, which was secured to him by the responsibility of Myles and Fleshman who had assigned it to him. His own evidence, is in these words: "On March 10, 1861, Michael Fleshman requested me to take the bond and go to B. Gilligan and trade it for Stalnaker's bond and said I will make it all right with you. Do the very best you can with it." Giving to this promise all the force which its words could possibly imply—it was no more than the promise of Michael Fleshman to answer for the debt, default or misdoings of another, and not having been in writing and signed by him was void under the statute of frauds, and never could have been enforced. But aside from this there is no evidence that Stalnaker was insolvent, or that the money could not have been collected from him by ordinary diligence. Hoylman was under no obligation to receive Confederate money for the amount of his debt from his administrator, much less to obligate himself to refund to him any portion of the money so received by him. Hoylman does not pretend that he was induced to accept Confederate money, in satisfaction of his debt, by Fleshman or that he ever promised to accept the same, or make it good to him, on the contrary, he testified that M. Fleshman refused to accept it.

Long before, and at the time the bond for $1,637.00 and the second deed of trust dated June 1, 1871 were executed, Hoylman claimed and insisted that he was entitled to a credit on his debt, for the sum of $800.00, on account of the loss suffered by him on the Stalnaker bond, and had even threatened to sue said Fleshman for the amount so claimed. This claim then barred by the statute of limitation was rejected and he renewed the bond of $1,000.00 by executing his obligation for $1,637.00 and the deed of trust of the date of June 1, 1871.

On April 26, 1878, before the bond of $1,131.16 and the last deed of trust were executed, another angry discussion over this same demand occurred accompanied with additional threats of bringing suit to recover the same, but finding he could not attain his end in this way, he declared he claimed no other credits than those already allowed him, he executed his bond for the $1,131.16 and the third deed of trust, which included a large amount of personal property besides the lands included in the former deeds of trust.

From these facts it is perfectly clear that on May 25, 1880, Hoylman had no just demand upon Fleshman for any sum whatever for which he could claim credit on his bond, nor did Michael Fleshman owe him the sum of $400.00 or any other sum whatever, on account of the Stalnaker bond of $558.00. So that the controversy in this case is narrowed down to the simple question, whether Michael Fleshman having executed to B. F. Fleshman trustee the deed of assignment of March 7, 1879, and delivered this bond of $1,131.16 with others to him as such trustee for the beneficiaries mentioned therein, can afterwards, without their consent deprive them of the benefits thereof?

The terms of this deed of assignment are absolute and unconditional, no interest in, or control over the bonds assigned is reserved to the assignor; he has disposed of his entire interest to the trustee and directed the manner in which the proceeds thereof shall be distributed and fixed the several portions to which each of his children and grand-children mentioned therein is entitled to receive from the trustee. Although entirely voluntary, it is an absolute gift of the moneys specified in said bonds, and one which he had the

93

right to make. The gift was fully executed, nothing further remained to be done by him to make it effectual, and it therefore became irrevocable. 2 Kent. Com. S. 439–440. While it is true the legal title to the choses in action mentioned in the deed of assignment still remained in Michael Fleshman, the whole beneficial interest therein had passed to the trustee and the beneficiaries in the deed, and he thereafter had no control over them and no subsequent assignment thereof could pass any interest therein to any other person, nor could he thereafter release the same. *Clarke* v. *Hogeman*, 13 W. Va. 718; *Tingle* v. *Fisher*, 20 W. Va. 497. This deed of assignment carried with, as incident to it the deed of trust executed to secure the payment of the bond of $1,131.16. So far as the said " release " was concerned it was wholly immaterial whether Hoylman had knowledge of the deed of assignment or not, as Michael Fleshman had no authority to execute it. There was no necessity to record this deed of assignment, as our recording acts do not require assignments of *choses* in action to be recorded. *Tingle* v. *Fisher*, *supra*; *Kirkland* v. *Chase & Co.*, 31 Gratt. 126. What then was the real character of this transaction, which resulted in the execution of this " receipt " of $400.00? We have seen that no debt was due from Michael Fleshman to Hoylman at that time arising out of the transaction in regard to the Stalnaker note; that no such debt ever in fact had any existence; that it had been repudiated and rejected when the bond of $1,637.00 was executed, and again repudiated and rejected in 1878 when the bond for $1,131.16 was executed, and that no valuable consideration therefor was at any time paid therefor. From the face of the "receipt" Hoylman then knew his bond was " in the hands of the trustee B. F. Fleshman." Upon the bond itself there was endorsed a credit of $50.00 placed there in his presence and at his request, upon an order of one of the beneficiaries mentioned in the deed of assignment then produced by him to such trustee. But the testimony of the defendant's witness Ward who prepared the " receipt " and the release, and made the settlement and wrote the bond of $1,131.16 and the deed of trust to secure the same, discloses to us the real purpose had in view, in the execution of the " receipt." The old gentleman for sixteen years had been

importuned and threatened by Hoylman ; he had by the deed of assignment disposed of all his estate; he had in the deed declared that his daughter Nancy, the wife of Hoylman, had received her portion of his estate, and his whole estate was disposed of by the deed of assignment, which even provided a fund for his burial expenses.    When directing this witness to prepare this " receipt," the old gentleman said : " In dividing his estate among his children he had studied the matter over well, and became satisfied that if Hoylman had collected all the money on the bond assigned him that he had gotten a heavy portion of it in Confederate money when it was greatly depreciated and probably worthless, *and that he might as well give Hoylman's wife (his daughter) $400.00 as his other children $800.00, and say that they were equal, as to give her $800.00 and take $400.00 off her husband, George W. Hoylman*, and that he was fully satisfied that the $400.00 which he intended to allow Hoylman on settlement would make everything all right." The purpose was plain, he had given away all he had, and by giving this receipt he was simply giving his daughter Nancy Hoylman, out of the amount due from her husband George W. Hoylman, $400.00 which he had already assigned to B. F. Fleshman in trust for his other children.    This he had no power to do, and the receipt was ineffectual for that purpose.

The release, executed in pursuance of this receipt was upon its face a complete extinguishment of the right of the trustee B. F. Fleshman to sell the real or personal property conveyed by the last deed of trust to secure the debt of $1,131.16.    He had the right to come into a court of equity and invoke its assistance in removing this obstacle to the execution of his trust, and that court having taken jurisdiction for that purpose, and having all the parties interest before it, will, on well settled principles retain the cause for all purposes, and will grant to the parties the relief to which they are entitled.

We are therefore of opinion that a court of equity had jurisdiction to annul and set aside the receipt and release, and that having taken jurisdiction for that purpose and an-, nulled and set the same aside, it had jurisdiction to afford to the plaintiff complete relief by entering against George W. Hoylman a personal decree for the balance ascertained to

remain unpaid on the trust-debt of $1,131.16, and to enforce payment thereof by a sale of the trust-property either by the trustee mentioned in the deed of trust, or by a special commissioner appointed for that purpose. In the case under consideration it was peculiarly appropriate, to appoint a special commissiner to execute the deed of trust of April 26, 1878, because B. F. Fleshman was the plaintiff in the suit seeking to enforce the collection of the trust-debt for the beneficiaries thereof, and in the exercise of his duties as such trustee it may possibly become necessary for him to purchase the trust subject for their benefit, in which event he could not be permitted to occupy the inconsistent position of seller and purchaser of the trust subject. The decree of the circuit court of Greenbrier county must therefore be affirmed, with costs to the appellee B. F. Fleshman and damages according to law.

AFFIRMED.